## STATE EX REL. MISSOURI GAS ENERGY, Appellant,

### v.

## PUBLIC SERVICE COMMISSION OF MISSOURI, Respondent.

### No. WD 65873.

Missouri Court of Appeals, Western District.

Feb. 20, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2007.

Application for Transfer Denied June 26, 2007.

Martin Matthew Montemore, Kansas City, MO, for Appellant.

Robert Samuel Berlin, Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, P.J., PATRICIA A. BRECKENRIDGE, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Missouri Gas Energy (MGE) appeals from a circuit court judgment affirming the Public Service Commission's decision that MGE violated a provision of its tariff by improperly refusing to provide service to an applicant. MGE contends that the decision is not supported by sufficient evi-

dence, is against the weight of the evidence, and is not reasonable. The appeal is dismissed for lack of jurisdiction.

### Statement of Facts

Michael McKinzy and Tamara Nance were married on February 16, 2003. Shortly thereafter, on March 2nd, Mr. McKinzy signed a lease for a residence at 8004 Overton Street in Raytown, Missouri. When Mr. McKinzy moved in on March 15th, MGE was supplying gas service to the house under an account in the name of the owner-lessor of the property.

On April 9th, Mr. McKinzy called MGE to have the natural gas service at 8004 Overton placed in his name. As part of the application process, Mr. McKinzy provided MGE with his new wife's name and her social security number. MGE's customer service representative made a contemporaneous record of the conversation, which indicated "that he and his wife have already moved into this address."

After a background check, MGE discovered that Tamara Nance had an outstanding bill of $449.96 for gas service at a previous address. Because of the outstanding bill, MGE did not transfer the natural gas service at 8004 Overton to Mr. McKinzy's name, relying on section 3.02 of its tariffs. Section 3.02 allows MGE to refuse to provide service when a member of an applicant's household has an outstanding unpaid bill. MGE continued service in the lessor's name.

When MGE informed Mr. McKinzy that his wife's outstanding gas bill resulted in his service not being transferred, Mr. McKinzy stated to MGE that his wife was not living at the 8004 Overton address. MGE's records state: "when told that [his wife's bill] has to be paid before turn on then he stated that she does not live with him." MGE asked for verification that his wife was not a member of his household.

The documents Mr. McKinzy provided were not relevant to the applicable time period. MGE also investigated to see whether Mrs. McKinzy was a customer at any other address and found that she was not.

At the request of the landlord, MGE terminated the gas service at 8004 Overton on June 18, 2003. The residence remained without gas until September 11, 2003.

Mr. McKinzy filed a complaint with the Public Service Commission on June 30, 2003, alleging that MGE had violated its tariffs by refusing to provide him with natural gas service at his residence at 8004 Overton. He also requested that the Commission issue an order prohibiting MGE from *ever* transferring Mrs. McKinzy's debt to his account. MGE responded that it did not violate its tariff because, pursuant to section 3.02, it was not required to provide service to a residence in which a member of the household had an outstanding balance for previously provided service, and Mrs. McKinzy had a debt of $449.96.

On September 8, 2003, Commission Staff filed a report regarding Mr. McKinzy's complaint. Three days later, on September 11, Mr. McKinzy and MGE reached an agreement to commence service in his name. On that date, even though the outstanding bill still had not been paid, MGE began supplying natural gas service to 8004 Overton. Consequently, MGE suggested in its response to the staff report that the complaint had been satisfied and that the case should be closed. Mr. McKinzy's position was that the complaint might not be resolved.

The Commission held a hearing on April 14, 2004, at which it heard testimony from Mr. McKinzy, MGE's customer service manager, and a Commission staff investigator. Mr. McKinzy testified, *inter alia,*

that although he and Ms. Nance were married in February 2003, she did not move in with him until December 24, 2003, about ten months later. MGE presented the testimony of its customer service manager and its business records which showed that when Mr. McKinzy applied for service, he indicated his wife would be living at the residence. MGE also presented evidence that on March 25, 2003, Ms. Nance updated her driver's license records to reflect her address as Mr. McKinzy's new service address, 8004 Overton, Raytown, Missouri. MGE also introduced an October 2003 *Kansas City Call* newspaper article, which indicated that Ms. Nance was a member of the household. Mr. McKinzy testified that the article was a mistake and maintained that Ms. Nance did not live with him throughout the period in controversy.

On June 2, 2004, Mr. McKinzy contacted MGE and requested that his service at 8004 Overton be terminated. He reported that he was moving out of the residence.

In August 2004, the Commission entered its Report and Order,[1] in which it found Mr. McKinzy's testimony that his wife was not living at 8004 Overton on April 9, 2003, to be credible and his explanations for the driver's license records, the newspaper story, and MGE's business records "plausible." The Commission found that Ms. Nance was not a member of the household when Mr. McKinzy applied for service, and that MGE, therefore, had violated section 3.01 of its tariffs by refusing to supply him natural gas service at that time. The Commission concluded, however, that MGE's belief that Mrs. McKinzy was a member of the household at the time was "reasonable and not in bad faith."

The Commission also found that because section 3.02 applies only if the past debtor was living at the residence when the appli-

cant requested service, MGE could not transfer Mrs. McKinzy's debt to Mr. McKinzy's account at that time. The Commission concluded that

> [i]f in the future Mr. McKinzy and Ms. Nance commence or transfer service in MGE's service area, and Ms. Nance still has a past due debt with MGE, Section 3.02 would apply, as would any other relevant Commission rule.

The Order further states that even though MGE violated section 3.01 of its tariff by refusing to provide service, because the service had since been commenced and an erroneous connection fee refunded, Mr. McKinzy "has received all the relief he is entitled to." MGE also apparently was not fined. The Commission stated that it would "not direct its Staff to initiate a case for civil penalties against MGE for its failure to promptly commence service to Mr. McKinzy."

In its motion for rehearing, MGE argued, *inter alia*, that the Commission's Order was against the weight of the evidence because the Commission erroneously found that Ms. Nance did not reside at the Overton address, and misinterpreted section 3.02. MGE also argued that because Mr. McKinzy had since terminated his service at 8004 Overton, the Commission should grant rehearing and find the matter moot. The Commission denied the motion for rehearing.

MGE filed a timely writ of review in Cole County Circuit Court, which was heard on July 18, 2005. The circuit court affirmed the decision of the Commission, finding that its order was "lawful, reasonable, not arbitrary and capricious, and supported by substantial and competent evidence."

MGE appeals.

---

1. The Commission's Order included one con- curring and two dissenting opinions.

## Standard of Review

 On appeal, this court reviews the Commission's decision, not that of the circuit court. *State ex rel. GS Techs. Operating Co. v. Pub. Serv. Comm'n*, 116 S.W.3d 680, 687 (Mo.App.2003). Our function is two-fold: we first determine whether the decision is lawful and then whether it is reasonable. Mo. CONST. art. V, § 18; *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 120 S.W.3d 732, 734 (Mo. banc 2003)). The Commission's decision on factual issues is presumed to be correct. *State ex rel. Atmos Energy Corp. v. Pub. Serv. Comm'n*, 103 S.W.3d 753, 759 (Mo. banc 2003). The appellants bear the burden of showing that the decision is either unreasonable or unlawful. *See* section 386.430.[2] We will affirm the order if it is supported by competent and substantial evidence on the record as a whole and not against the weight of the evidence. *State ex rel. Util. Consumers Council of Mo., Inc. v. Pub. Serv. Comm'n*, 585 S.W.2d 41, 47 (Mo. banc 1979).

## Points on Appeal

MGE raises three points on appeal. All three contest the Commission's finding that MGE violated section 3.01 of its tariffs in refusing to commence, supply, or transfer service to 8004 Overton, because the basis of the Commission's decision— *i.e.*, that Mrs. McKinzy was *not* a member of Mr. McKinzy's household when he sought to commence service to that address—(1) was not supported by substantial and competent evidence; (2) was against the weight of the evidence; and (3) was not reasonable, in that Commission failed to apply a marriage presumption and Mr. McKinzy failed to rebut such a

presumption with substantial and competent evidence.

## Preservation

 The Commission urges this court to dismiss for lack of jurisdiction because none of the arguments MGE raises on appeal were included in its motion for rehearing. The Commission cites section 386.500.2, which provides that an "applicant shall not in any court urge or rely on any ground not so set forth in its application for rehearing."

Although the application for rehearing was not well drafted in that it did not specifically mention Tariff 3.01, we believe it was clear to the Commission that MGE was appealing the Commission's ruling that MGE violated Tariff 3.01. The whole controversy was about whether Ms. Nance actually resided at 8004 Overton in April 2003. The Commission found that she did not live there at that time despite substantial evidence to the contrary.

Although MGE specifically mentioned Tariff 3.02 and not 3.01, the argument as to 3.01 was impliedly preserved because the applicability of 3.02 was entirely contingent upon the factual determination pursuant to 3.01. Therefore, we believe that it was clear to the Commission that MGE was complaining of the Commission's decision as to Ms. Nance's residence. Therefore, we decline to dismiss the appeal for the reason that the ground of appeal was not preserved.

## Mootness

 We *do*, however, have a *concern* about the apparent mootness of the appeal. A case on appeal becomes moot when a change in circumstances so alters the posi-

---

**2.** All statutory references are to the Revised Statutes of Missouri, 2000, unless otherwise

indicated.

tion of the parties or subject matter that the controversy ceases to exist and a decision can grant no relief. *State ex rel. Monsanto Co. v. Pub. Serv. Comm'n*, 716 S.W.2d 791, 793 (Mo. banc 1986). When the question presented seeks a judgment that would have no practical effect on an existing controversy, the matter is moot. *State ex rel. Chastain v. City of Kansas City*, 968 S.W.2d 232, 237 (Mo.App.1998). In determining mootness, the appellate court may consider facts outside the record. *Monsanto*, 716 S.W.2d at 793. "When an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is moot and generally should be dismissed." *In re Sw. Bell Tel. Co.'s Proposed Revision to Gen. Exch. Tariff, P.S.C. MO–No. 35*, 18 S.W.3d 575, 577 (Mo.App.2000) (*quoting State ex rel. County of Jackson v. Pub. Serv. Comm'n*, 985 S.W.2d 400, 403 (Mo.App.1999)). An actual controversy susceptible of some relief must exist in order for this court to have jurisdiction. *State ex rel. Mo. Cable Television Ass'n v. Pub. Serv. Comm'n*, 917 S.W.2d 650, 652 (Mo.App.1996).

There are two narrow exceptions to the mootness doctrine which allow an appellate court to exercise its discretion to consider an appeal. *Mo. Cable Television Ass'n*, 917 S.W.2d at 652. Those are: (1) where the case becomes moot after submission and argument; *Id.* at 652, n. 1, and (2) where the issue raised is one of general public interest and importance, recurring in nature, and will otherwise evade appellate review. *Id.* at 652. Neither of those situations is present here.

On June 2, 2004, less than ten months after MGE commenced service and before the Commission issued its Order, Mr. McKinzy requested that MGE terminate his service at 8004 Overton. Mr. McKinzy reported that he was moving out of the

residence at that time, and he evidently has not applied for gas service elsewhere in MGE's service area.

Under the terms of the Commission's Order, if and when the McKinzys seek to connect or transfer their service to another account or address within MGE's service area, MGE may then transfer Mrs. McKinzy's bill to that account (so long as she is then a member of the household). Thus, although Mr. McKinzy apparently no longer lives within the service area, MGE will be able to collect on Ms. Nance's debt in the future if he applies for service from MGE, so long as Ms. Nance is a member of the household at that time.

The Commission found that because the gas service had been commenced and an erroneous connection fee refunded, Mr. McKinzy "has received all the relief he is entitled to." MGE also was not fined.

MGE itself took the position in its motion for rehearing that the matter was moot. MGE argued that because Mr. McKinzy recently had requested termination of his service at 8004 Overton based on the fact that he was moving, "Mr. McKinzy's complaint concerning a current transfer should be dismissed as moot." MGE also argued that "the Commission's decision as to [the transfer issue] is in the nature of judicial declaratory relief and is unauthorized under Missouri law."

At oral argument, this court raised the issue of why the matter was not moot. In oral response, and in supplemental memoranda to the court, counsel for MGE referred to the possibility of a civil suit by Mr. McKinzy. According to MGE, Mr. McKinzy is pursuing a civil lawsuit against MGE arising out of the refusal to provide service. Citing *Bresnahan v. May Department Stores Co.*, 726 S.W.2d 327 (Mo. banc 1987), MGE anticipates that Mr. McKinzy will attempt to use the Commis-

sion's ruling to estop MGE from arguing in such a lawsuit either that it did not violate its tariffs by refusing to supply gas service or that it properly denied service because Mrs. McKinzy was a member of the household and had an outstanding debt with MGE.

■ It appears that in a civil action collateral estoppel (issue preclusion) can sometimes be used to preclude relitigation of an issue that was raised and decided in an administrative proceeding. *Bresnahan,* 726 S.W.2d at 329; *Miller v. Pool & Canfield, Inc.,* 800 S.W.2d 120, 124 (Mo.App. 1990). In determining whether it applies, the court uses the same four-part test used in any other setting for determining whether collateral estoppel applies:

> (1) was the issue in the prior proceeding identical to the one in present litigation; (2) did the prior adjudication result in a judgment on the merits; (3) is the doctrine being asserted against a person who was a party to the previous litigation or in privity with such a party; and (4) did the party have a full and fair opportunity to litigate the issues previously decided.

*Egan v. Craig,* 967 S.W.2d 120, 124 (Mo. App.1998).

However, these requirements can be difficult to meet in the setting of an administrative adjudication. For instance, in *Egan,* the court found, *inter alia,* that the issue in the prior administrative proceeding was not identical to the issue to be resolved in his civil action; in one proceeding the issue was "disability," and in the other the issue was "handicap" for purposes of the Missouri Human Rights Act. *Id.* at 124–26.

The PSC purported to resolve the issue of whether in April 2003 Ms. Nance was a resident at the Overton address. The PSC also concluded that MGE was reasonable and not in bad faith in its determination

(perhaps partly because McKinzy failed to provide relevant documentation to MGE that Ms. Nance did not live at the address). MGE had the burden of demonstrating that the matter is not moot due to some proceeding outside of our record; yet MGE has not supplied us with any pleadings of any civil action of Mr. McKinzy, or any description of the nature of any pending issues in that matter. The mere fact that there is litigation between McKinzy and MGE does not establish that anything that is decided in this case will result in issue preclusion, or otherwise have consequences, in that case.

There is no demonstration that this appeal is not moot. Therefore, we conclude that we lack jurisdiction.

### Conclusion

We dismiss the appeal for lack of jurisdiction.

EDWIN H. SMITH and BRECKENRIDGE, JJ., concur.